Citation Nr: 1228224 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-30 593 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana


THE ISSUES

1. Entitlement to an increase in the 10 percent evaluation currently assigned for a shell fragment wound scar on the right thigh. 

2. Entitlement to an earlier effective date for the assignment of a 10 percent evaluation for a shell fragment wound scar on the right thigh. 

3. Entitlement to an effective date earlier than in May 2003, for the grant of a total rating for compensation purposes based on individual unemployability (TDIU). 

4. Entitlement to compensation at the 100 percent rate from the date of discharge from service. 

REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Christopher Maynard, Counsel

INTRODUCTION

The Veteran had active service from August 1966 to August 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2003, March 2006, and June 2007 rating actions. 


FINDINGS OF FACT

1. The right thigh SFW scar is manifested by a tender, 18-cm long by 2-cm wide, deep, vertical, midline scar on the anterior aspect of the thigh without keloid formation, inflammation or edema. 

2. The Veteran did not appeal the December 2000 rating decision which, in part, assigned a separate 10 percent for the right thigh SFW scar, and that decision is final. 

3. An informal claim for TDIU was received by VA in May 2003. 

4. A TDIU was granted by the RO in August 2003, effective in May 2003, the date that the Veteran retired from full-time employment with the U.S. Postal Service. 

5. The evidence does not show that the Veteran was unemployable due to service-connected disabilities during the one year prior to May 2003, and there was no formal or informal application for a TDIU pending that was not adjudicated prior to his May 2003, application. 

6. The Veteran's claim for compensation at the 100 percent rate since his discharge from service lacks legal merit. 
CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 10 percent for right thigh shrapnel wound scar are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 4.3, 4.118, Part 4, Diagnostic Code 7805 (2011). 

2. An effective date earlier than August 17, 2000, for the assignment of a 10 percent evaluation for right thigh shrapnel wound scar is not warranted. 38 U.S.C.A. § 7104 (West 2002 & Supp. 2010); 38 C.F.R. § 20.1100 (2011); Rudd v. Nicholson, 20 Vet. App. 296, 299-300 (2006). 

3. An effective date earlier than in May 2003, for an award of a TDIU is not warranted. 38 U.S.C.A. §§ 5101(a), 5103A, 5107, 5110 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.1(p)(r), 3.155, 3.157, 3.341, 3.400(o)(2), 4.16(a) (2011). 

4. The Veteran's claim for compensation at the 100 percent rate since his discharge from service lacks legal merit. 38 U.S.C.A. §§ 5101(a), 5103A, 5107, 5110 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.1(p)(r), 3.155, 3.157, 3.340, 3.400(b)(2), (2011). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Before addressing the merits of the Veteran's claims, the Board is required to ensure that the VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2011). When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159. Such notice must indicate that a disability rating and an effective date for the award of benefits will be assigned if there is a favorable disposition of the claim. Id; 38 U.S.C.A. §§ 5100, 5102, 5106, 5107, 5126; 38 C.F.R. § 3.326; see also Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). 

In this case, the notification obligation for an earlier effective date for TDIU was accomplished by way of a letter from the RO to the Veteran dated in March 2004. With respect to the right thigh shrapnel scar claim, the Veteran was not provided with appropriate notice prior to adjudication of the claim in June 2007. However, this is not prejudicial to the Veteran, as he was subsequently provided adequate notice, the claim was readjudicated and a supplemental statement of the case (SSOC) was promulgated in August 2009. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007) [hereinafter Mayfield III]; Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); 38 U.S.C.A. § 5103; 38 C.F.R. § 3.159(b)(1). 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished and that appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records (STRs) and all VA and available private medical records have been obtained and associated with the claims file. The Veteran was examined by VA during the pendency of this appeal, and was scheduled for a travel Board hearing, but withdrew his request and asked that his claim be forwarded to the Board for adjudication. (See August 2011 letter). The Board finds that the VA scar examination was thorough and adequate upon which to base a decision for the increased rating claim, and there is no evidence indicating that there has been a material change in the severity of the Veteran's right thigh scar since the most recent VA examination. The examiner personally interviewed and examined the Veteran, including eliciting his medical history, and provided the information necessary to evaluate his shrapnel scar under the appropriate, applicable rating criteria. Given the static nature of the disability, the Board finds that the examination was adequate and that remanding the appeal for a more current examination would be of no useful purpose and would only serve to delay adjudication of the Veteran's appeal. 

Further, neither the Veteran nor his representative have made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide the merits of the issues on appeal, and neither has argued that any error or deficiency in the accomplishment of the duty to notify and duty to assist has prejudiced the Veteran in the adjudication of his appeal. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). Based on a review of the claims file, the Board finds that there is no indication in the record that any additional evidence relevant to the issues to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Accordingly, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the Veteran's appeal. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2011). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2011). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992). 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2011). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are, however, appropriate when the factual findings show distinct time periods in which a disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). "The relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim." Hart, 21 Vet. App. at 509. 

Right Thigh Scar

Initially, it should be noted that during the pendency of this appeal, VA amended the rating criteria for the evaluation of scars, which became effective on October 23, 2008. However, it was specifically noted that this amendment shall apply to applications for benefits received by VA on or after October 23, 2008. Although a Veteran may request review under the new criteria, this Veteran has not made such a request. Accordingly, his claim will be reviewed under the criteria in effect prior to October 23, 2008. 

The Veteran contends, in essence, that his right thigh SFW scar is more severe than is reflect by the 10 percent evaluation currently assigned. 

Concerning the Veteran's contentions, while he is competent to offer evidence as to the visible symptoms or manifestations of his disability, his belief as to its current severity under pertinent rating criteria or the nature of the service-connected pathology is not probative evidence. Only someone qualified by knowledge, training, expertise, skill, or education, which the Veteran is not shown by the record to possess, may provide evidence requiring medical knowledge. Layno v. Brown, 6 Vet. App. 465, 470 (1994); Grottveit v. Brown, 5 Vet. App. 91, 92-93 (1993). 

The service treatment records (STRs) showed that the Veteran sustained shell fragment wound (SFW) to the right thigh in Vietnam in April 1967. The STRs did not include any detailed reports concerning the injury or immediate treatment, and showed only that a pressure dressing was applied in the field, that the wound was debrided at an evacuation hospital, and that the Veteran was placed on restricted duty for three months. An examination note in August 1967 showed a well-healed scar on the anterior thigh area with some muscle loss and stable knee joint. An evaluation report in July 1968, indicated that the scar was well-healed and there was no bony involvement. There was retained metallic foreign body in the right thigh with some soft tissue loss and weakness of the quadriceps, but the knee joint was stable. 

When examined by VA in July 1969, there was a well-healed, 81/2 by 1/2-inch vertical scar on the anterior aspect of the right thigh, which was not tender or adherent. 

By rating action in August 1969, the RO granted, in part, service connection for residuals of a SFW on the right anterior thigh, involving Muscle Group (MG) XIV, and assigned a 30 evaluation; effective from August 3, 1968, the date of discharge from service. A notice of disagreement was received in April 1970, and a statement of the case was promulgated in July 1970. However, the Veteran did not perfect an appeal and that rating decision became final. 

By rating action in December 2000, the Veteran was assigned a separate 10 percent evaluation for a painful and tender right thigh SFW scar, based on a September 2000 VA examination report which showed that the right thigh scar was tender to palpation. The Veteran and his representative were notified of this decision and did not appeal. 

A claim for increase was received from the Veteran in February 2005. 

When examined by VA in March 2005, the examiner indicated that the claims file was reviewed and included a description of the Veteran's complaints, medical history and findings on examination. The Veteran complained of pain in the right thigh scar area and right leg weakness. On examination of the right thigh, there was no inflammation, edema, or keloid formation. There was a 2-cm by 7-inch (18-cm) vertical scar on the anterior aspect of the right thigh with significant underlying tissue loss and some areas of muscle herniation about the scar. The circumference of the right thigh was 1/2-inch larger than the left. The diagnoses included stable, right anterior thigh shell fragment wound scar without breakdown, ulceration or keloid formation. 

The Veteran's shrapnel scar is rated under DC 7804, which provided for a 10 percent evaluation for superficial scars that are painful on examination. 38 C.F.R. § 4.118, DC 7804 (in effect prior to October 23, 2008). 

Other potentially applicable rating codes in effect prior to October 23, 2008, included Diagnostic Codes 7801, 7802, 7103, and 7805. Under DC 7801, for scars other than head, face, or neck, that are deep or that cause limited motion, a 10 percent disability rating is for assignment for an area or areas exceeding 6 square inches (39 sq. cm); a 20 percent rating is assigned for an area or areas exceeding 12 square inches (77 sq. cm); a 30 percent rating is warranted for an area or areas exceeding 72 square inches (465 sq. cm), and a 40 percent rating is assigned for an area or areas exceeding 144 square inches (929 sq. cm). 

Under DC 7802, a 10 percent evaluation is assigned for scars, other than the head, face, or neck that are superficial, do not cause limited motion and have an area or areas of 144 square inches or greater. Under DC 7803 a 10 percent evaluation is assigned for unstable, superficial scars. DC 7805, provides that scars be evaluated on the basis of any related limitation of function of the body part which they affect. DC 7800 (disfigurement of the head, face, or neck) is not for application in the present case. 

At this point, it should be noted that the Veteran has been assigned a separate 30 percent evaluation for a SFW to the right thigh with damage to Muscle Group XIV under Diagnostic Code (DC) 5314, which contemplates moderately severe impairment of function of the right leg, knee and hip. However, as the Veteran has not asserted a claim for an increased rating for this disability, the appeal will be confined to the current residuals of the shrapnel wound scar, alone. 

Based on the findings from the March 2005 VA examination, the Board finds that the preponderance of the evidence is against the assignment of an evaluation in excess of 10 percent for the right thigh shrapnel scar. Other than some reported tenderness, the scar is essentially asymptomatic. That is, the scar is less than six square inches in area and does not cause any demonstrable functional impairment. 

Applying the appropriate diagnostic codes to the facts of this case, the assessment of the Veteran's present impairment from the right thigh SFW scar does not show that he has sufficient symptoms so as to a warrant an evaluation in excess of the 10 percent evaluation assigned at any time during the pendency of this appeal, including the one year period prior to receipt of his claim in 2005. Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119 (1999). Accordingly, an increased evaluation for the residuals of the right thigh shrapnel scar is not warranted. 

The Board has also considered whether the case should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration under 38 C.F.R. § 3.321(b)(1). The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

For the reasons discussed above, the Board finds that the manifestations of the Veteran's shrapnel scar is consistent with the schedular criteria, and there is no objective or competent medical evidence that any manifestation related to the service-connected disability is unusual or exceptional. The schedular rating criteria adequately contemplate the degree of impairment caused by the Veteran's disability, and provides for increased ratings for additional symptoms. In view of this, referral of this case for extraschedular consideration is not in order. Id. See also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (noting that the disability rating itself is recognition that industrial capabilities are impaired). 

The benefit of the doubt has been considered, but there is not an approximate balance of positive and negative evidence regarding the merits of the Veteran's claim. Therefore, that doctrine is not for application in this case because the preponderance of the evidence is against the claim. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

Effective Dates - In General

The provisions governing the assignment of the effective date of an increased rating are set forth in 38 U.S.C.A. § 5110(a) and (b)(2), and 38 C.F.R. § 3.400(o). A claim for a TDIU is a claim for an increased rating. Dalton v. Nicholson, 21 Vet. App. 23, 31-32 (2007); see also Hurd v. West, 13 Vet. App. 449, 451-52 (2000); Norris v. West, 12 Vet. App. 413, 420 (1999). 

The general rule with respect to effective date of an award of increased compensation is that the effective date of award "shall not be earlier than the date of receipt of the application thereof." 38 U.S.C.A. § 5110(a). This statutory provision is implemented by regulation that provides that the effective date for an award of increased compensation will be the date of receipt of claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(o)(1). 

An exception to that rule regarding increased ratings applies, however, under circumstances where the evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation. If an increase in disability occurred within one-year prior to the claim, the increase is effective as of the date the increase was "factually ascertainable." If the increase occurred more than one year prior to the claim, the increase is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C.A. 5110(b)(2); Dalton v. Nicholson, 21 Vet. App. at 31-32; Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. 3.400 (o)(1)(2); VAOPGCPREC 12-98 (1998). 

As to the terms "application" or "claim," the Board notes that once a formal claim for compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, a report of examination or hospitalization by VA or the uniformed services can be accepted as an informal claim for benefits. The date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of a claim. These provisions apply only when such reports relate to examination or treatment of a disability for which service connection has been previously established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment, or hospital examination. 38 C.F.R. §§ 3.157(b)(1), 3.155(a) (2011). 

38 C.F.R. § 3.155(c) provides that when a claim has been filed which meets the requirements of 38 C.F.R. § 3.151 or 38 C.F.R. § 3.152, an informal request for increase or reopening will be accepted as a claim. 

VA regulations provide that a determination on a claim by the agency of original jurisdiction of which the claimant is properly notified is final if an appeal is not perfected within one year of the date that notice of the determination is mailed to the claimant. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 20.302, 20.1103 (2011). 

A written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement. While special wording is not required, the Notice of Disagreement must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review. 38 C.F.R. § 20.201 (2011). 

Right Thigh Scar

In the instant case, the Veteran asserts that the 10 percent evaluation assigned for his right thigh scar should be made effective the date of his discharge from service. 

Historically, the Veteran was initially granted service connection for residuals of a SFW on the right anterior thigh, involving Muscle Group (MG) XIV, and assigned a 30 evaluation; effective from August 3, 1968, the date of discharge from service. Parenthetically, the Board notes that while the Veteran complained of pain throughout the entire right leg when examined by VA in July 1969, the scar itself, was not tender or painful on examination. A notice of disagreement was received in April 1970, and a statement of the case was promulgated in July 1970. However, the Veteran did not perfect an appeal and that rating decision became final. 

By rating action in December 2000, the RO assigned a separate 10 percent evaluation for the right thigh SFW scar; effective from August 17, 2000, the date of receipt of a claim for increase, based on a September 2000 VA examination report which showed that the scar was tender to palpation. The Veteran and his representative were notified of this decision and did not appeal. 

Accordingly, the issue of entitlement to a 10 percent rating for the Veteran's shell fragment wound scar prior to August 17, 2000, is res judicata. That is to say, the question has been settled. See Flash v. Brown, 8 Vet. App. 332, 340 (1995); see also Routen v. West, 142 F.3d 1434, 1437-38 (Fed. Cir. 1998) (applying finality and res judicata to VA decisions). In arguing now that the award of a 10 percent evaluation should be made earlier than August 17, 2000, the Veteran is essentially attempting to re-litigate the same issue that has already been considered and denied by the RO. 

In Rudd v. Nicholson, 20 Vet. App. 296, 299-300 (2006), the Court held that once a rating decision which establishes an effective date becomes final, the only way that such a decision can be revised is if it contains clear and unmistakable error (CUE). The Court noted that any other result would vitiate the rule of finality. In other words, the Court has found that there are no freestanding claims for an earlier effective date. When such a freestanding claim for an earlier effective date is raised, the Court has held that such an appeal should be dismissed. 

Here, the Veteran did not perfect an appeal from the August 1969 rating decision that originally granted service connection for residuals of a SFW of the right anterior thigh, involving MG XIV, or to the December 2000 rating decision that assigned a separate 10 percent evaluation for a tender and painful scar. As such, his claim for an earlier effective date can only be construed as a freestanding claim, which is not a valid claim. Accordingly, a "case or controversy" involving a pending adverse determination that the Veteran has taken exception to does not currently exist. See Shoen v. Brown, 6 Vet. App. 456, 457 (1994). Therefore, the appeal must be denied. 

TDIU

A claim for TDIU, qualifies as a claim for increased disability compensation and is subject to the criteria under 38 U.S.C.A. § 5110(a) and (b)(2) and 38 C.F.R. § 3.400(o)(2), cited above. Under those provisions, the effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date. 

A TDIU award of benefits itself, may be granted where the schedular rating is less than total, but when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2011). 

Even when the percentage requirements are not met, entitlement to a total rating, on an extraschedular basis, may nonetheless be granted, in exceptional cases, when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. §§ 3.321(b), 4.16(b). 

A discussion of the history of the Veteran's claims is instructive. By rating action in August 1969, service connection was established for residuals of a shell fragment wound (SFW) to the right thigh, involving Muscle Group XIV and for a SFW scar on the right calf; rated 30 percent and noncompensably disabling, respectively and made effective from August 3, 1968, the day following discharge from service. The Veteran did not perfect an appeal to this rating decision and the evaluations remained in effect until December 2000, when the Veteran was assigned a separate 10 percent for the SFW scar of the right thigh, (which records for the first time indicated was tender). The Veteran and his representative were notified of this decision and did not appeal. 

By rating action in June 2001, the Veteran was granted service connection for prostate cancer and assigned a 100 percent schedular evaluation; effective from May 17, 2001. By rating action in January 2002, service connection was established for diabetes mellitus and a 10 percent evaluation assigned; effective from January 22, 2002. In February 2002, the Veteran's diabetes evaluation was increased to 20 percent, and he was notified that the RO proposed to reduce the 100 percent schedular evaluation for prostate cancer. The reduction to 20 percent was accomplished by rating action in May 2002; effective from August 1, 2002. The combined rating thus became 60 percent from August 1, 2002. By rating action in March 2003, service connection was established for post traumatic stress disorder; rated 30 percent disabling, fecal incontinence associated with prostate cancer; rated 10 percent disabling, and erectile dysfunction, rated noncompensably disabling. With these additional disabilities, the combined rating became 80 percent from October 25, 2002. 

A claim of entitlement to TDIU was received from the Veteran in May 2003. At that time the Veteran reported that he retired on May 5, 2003, after 20 years of employment with the U.S. Postal Service (USPS). By rating action in August 2003, the RO granted an increased rating to 60 percent for fecal incontinence, to 40 percent for prostate cancer, and TDIU, each effective from May 30, 2003, the date of receipt of his claim for increase. In August 2004, the RO found clear and unmistakable error in the August 2003 rating decision concerning the effective date assigned for the Veteran's TDIU, and assigned an effective date of May 6, 2003; the day following his retirement from the USPS. 

In this case, the Veteran did not perfect an appeal from the August 1969 rating decision that granted service connection for residuals of a SFW to the right thigh, or to any of the subsequent rating decisions discussed above. Therefore, those decisions are final and, absent a claim of clear and unmistakable error, which is not asserted in this case, there is no basis for the assignment of an effective date earlier than assigned for the ratings of the particular disabilities. 38 C.F.R. § 20.1103. 

As to TDIU, prior to the August 2003 rating decision that granted increased ratings to 60 percent for fecal incontinence and to 40 percent for prostate cancer, the Veteran did not meet the minimal schedular criteria for TDIU. That is, the Veteran did not have a single service-connected disability rated 60 percent or more, or at least one disability ratable at 40 percent or more with a combined rating of 70 percent. Therefore, he did not meet the threshold requirements for TDIU, prior to May 30, 2003. 

Furthermore, the medical reports of record do not show that the Veteran's service-connected disabilities during the remaining one year period prior to the effective date of the award of TDIU precluded gainful employment. While the Veteran was seen by VA for various maladies, the reports do not show that his service-connected disabilities were more disabling than reflected in the evaluations assigned for each disability. Thus, it was not factually ascertainable that the Veteran was unemployable due to his service-connected disabilities, alone. 

Here, the RO assigned an effective date in May 2003, for the grant of TDIU based on a finding that the Veteran's service-connected disabilities rendered him unemployable from the day that he retirement from the USPS after 20 years of employment. There was no unadjudicated formal or informal claim for a TDIU that was pending before VA prior to the May 30, 2003 claim. As such, the Board concludes that an effective date earlier than in May 2003 for the award of a TDIU is not warranted. The appeal in this regard is denied. 


100 Percent Disability Rating

Concerning the Veteran contentions that he should be assigned a 100 percent rating for his service-connected disabilities from the date of his discharge from service, the Board finds no factual merit to his claim. 

While the Veteran contends that he has suffered from PTSD, prostate problems and diabetes mellitus since his discharge from service, the evidence showed that he was diagnosed with prostate cancer in 2001, diabetes in January 2002, and did not report any symptoms of PTSD until October 2002. Moreover, the Veteran did not file a claim for any of these disabilities until more than two decades after service. 

As noted above, the Veteran did not appeal any of the rating decisions from August 1969 to March 2003, therefore, those decisions are final. Absent a claim of clear and unmistakable error, which is not asserted in this case, there is no basis for the assignment of a 100 percent evaluation for any of the claimed disabilities from the date of discharge from service. 38 C.F.R. § 20.1103. 


ORDER

An increased evaluation for a right thigh SFW scar is denied. 

Entitlement to an earlier effective date for a 10 percent evaluation for right thigh SFW scar is denied. 

Entitlement to an effective date earlier than in May 2003, for a grant of TDIU, is denied. 

Entitlement to compensation at the 100 percent rate from the date of discharge from service, is denied. 




____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs